SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JULIA E. JARRETT**
Assistant United States Attorney
Julia.Jarrett@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**BREANNA GEHLERT,**<br><br>**Defendant.** | **3:26-cr-00142-IM-2**<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

## INTRODUCTION

Between October 2021 and April 2023, defendant Breanna Gehlert and her co-conspirator, Kirsten Imler, laundered over $371,000 in funds stolen from a client of Imler's employer. Defendant knew the funds were criminal proceeds and nevertheless took deliberate steps to conceal the money and prevent law enforcement from tracing it to its source.

/ / / /

/ / / /

The Government recommends a sentence at the low end of the applicable Guidelines range. A sentence of 10 months' imprisonment is sufficient to reflect the seriousness of Defendant's conduct and to promote respect for the law.

There are no disputed guideline or legal disputes—the only issue is the appropriate sentence under 18 U.S.C. § 3553(a).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Offense Conduct

In October 2021, the defendant's girlfriend and co-conspirator, Kirsten Imler, began working for an Oregon-based company doing non-fungible token ("NFT") smart contract coding. An NFT is a data file containing a unique digital identifier that is recorded on the blockchain. An NFT is typically associated with graphic art or other type of asset and is used to certify ownership and authenticity. Adult Victim 1 ("AV1") hired the company to design and issue NFTs for a project. Imler worked through the company and with others to provide the coding support for AV1's project.

At some point between October 29 and November 2, 2021, Imler changed the cryptocurrency address on record with the NFT digital marketplace so AV1's royalties from the sale of the NFTs would be sent to a cryptocurrency address Imler controlled. On November 2, 2021, approximately 82.68 Ethereum ("ETH") (then with an approximate value of $371,505) in AV1's royalties were disbursed to the address Imler controlled. ETH is a cryptocurrency similar to Bitcoin. The same day, Imler transferred the ETH from that address to a Coinbase account opened in Imler's name and ultimately transferred some of these funds to an anonymous wallet.

/ / / /

/ / / /

Records from defendant's Google account show that less than two weeks after her co-defendant stole the funds, defendant googled, "what kind of evidence do they have to have to charge u with theft of crypto".

From there, over the course of several months, Imler transferred a total of 31.34 ETH from the anonymous wallet to defendant's Coinbase account, which was opened for the purpose of accepting these proceeds. Over the course of two months, defendant transferred a total of 6.70 ETH back to Imler but to a different cryptocurrency account and transferred the remainder to her own personal bank account. The funds laundered as part of the conspiracy were used to purchase a new truck, fund more then $75,000 in cash withdrawals, and finance purchases and living expenses over the course of the next year, including more than $37,000 at Wal-Mart.

### B. The Charges, the Plea Agreement & Guideline Computations

On May 12, 2026, the defendant was charged in a one-count Information with conspiracy to launder monetary instruments in violation of Title 18, United States Code, Section 1956(h).

The defendant has not yet been arraigned on these charges. Because defendant resides in Missouri, all parties and the Court agreed to handle defendant's arraignment, waiver of Indictment, change of plea, and sentencing in a single hearing to avoid defendant needing to take multiple trips to Oregon.

Defendant has signed a plea agreement and is expected to plead guilty to the one-count Information. This plea agreement includes a waiver of full discovery, a waiver of venue challenges, and agreements to two financial judgments: a restitution judgement of at least $371,505 and a forfeiture money judgment of $62,741. The parties further agreed to specific guideline calculations outlined in the agreement.

Pursuant to the agreement, the government will, subject to the limitations set forth in the agreement, recommend that defendant receive a two-level minor role reduction, a two-level reduction for being a zero-point offender, a three-level reduction for an early resolution, and a three-level reduction for acceptance of responsibility.

In sum, the parties agree with the following PSR computations:

| **Count 1: 18 U.S.C. § 1956(h) – Conspiracy to Launder Monetary Instruments** | | |
|---|---|---|
| USSG § 2S1.1(a)(2) | Base Offense Level | 8 |
| USSG §§ 2S1.1(a)(2), 2B1.1(b)(1)(G), and 1B1.3 | Amount Laundered more than $250,000 | +12 |
| USSG § 2S1.1(b)(2)(B) | Conviction Under § 1956 | +2 |
| USSG § 3B1.2(b) | Minor Role Reduction | -2 |
| USSG § 4C1.1 | Zero-Point Offender | -2 |
| 18 U.S.C. § 3553(a) | Early Resolution | -3 |
| USSG § 3E1.1 | Acceptance of Responsibility | -3 |
| | **Total Offense Level** | **12** |

## ARGUMENT

### A. Government's Recommended Sentence

Criminals commit fraud for money. But they cannot fully benefit from those stolen funds if they cannot move, conceal, or convert those funds without detection. Money laundering is a serious offense because it enables criminal conduct to pay off. Laundering allows criminals to distance themselves from the proceeds of their crimes, frustrates law enforcement's ability to trace and recover stolen assets, and undermines the integrity of the financial system on which legitimate businesses and individuals depend. It is not merely a technical offense committed after a crime has occurred; it is a critical step in making criminal proceeds usable and keeping them in the hands of criminals.

The Court will hear much about defendant's personal circumstances and her relatively minor role in the offense. It is true that defendant did not steal the funds, nor did she mastermind

the money-laundering conspiracy. But defendant was willing to participate when doing so meant she could financially benefit—and she did so knowing exactly where the money came from.

Defendant knew that the sudden influx of a substantial amount of cryptocurrency, just weeks after her girlfriend began working for a new company, was not an ordinary paycheck or project bonus. She knew the money was stolen. Indeed, after her girlfriend committed the theft, defendant searched online for what evidence would be required to convict someone of stealing cryptocurrency. Despite that knowledge, defendant chose to participate in concealing the proceeds.

The government has accounted for defendant's lesser role through the applicable guidelines role reduction. But her role was nonetheless important to the conspiracy's efforts to conceal the nature and source of the stolen funds. Defendant and Imler worked together to move the proceeds through newly opened cryptocurrency accounts and multiple bank accounts, making the funds more difficult to trace. They also made substantial cash withdrawals, further distancing the proceeds from the underlying theft and frustrating efforts to follow the money.

Defendant therefore played a meaningful role in transforming stolen cryptocurrency into funds that could be accessed and used while obscuring their criminal origin. Her lesser role warrants the reduction she has received under the guidelines, but it does not diminish the seriousness of her knowing decision to launder more than $371,000 in stolen funds.

For these reasons, the government recommends a sentence of 10 months' imprisonment. Such a sentence is sufficient to reflect the seriousness of defendant's conduct and to serve the purposes of punishment and deterrence, both general and specific.

/ / / /

/ / / /

**B. Restitution & Forfeiture**

Pursuant to the plea agreement. the United States is seeking a restitution judgment of $371,505 ordered jointly and severally with her co-defendant. The United States is also seeking a forfeiture money judgment of $62,741, which is the value of the funds defendant personally obtained over the course of the conspiracy. The government asks that the Preliminary and Final Order of Forfeiture be entered and incorporated as part of the judgment.

**CONCLUSION**

Based on the foregoing, the government recommends that this Court impose a sentence of 10 months, followed by a 3-year term of supervised release, and restitution and forfeiture judgments as described above.

Dated: September 10, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Julia E. Jarrett*
JULIA E. JARRETT
Assistant United States Attorney